**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DERECK MARTZ,** | : | **CIVIL NO. 3:13-CV-2570** |
| **Petitioner** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **VINCENT MOONEY,** *et al.*, | : | |
| **Respondents** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Petitioner Dereck Martz ("Martz") a former Pennsylvania state inmate this action on October 15, 2013, with the filing of a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).  He challenges the Judgment of Sentence entered on June 22, 2005, in Court of Common Pleas of Montour County Criminal case number CP-47-CR-205-2003. Procedurally, the matter was stayed in accordance with the stay and abeyance rule announced in <u>Crews v. Horn</u>, 360 F.3d 146, 151 (3d Cir. 2004), on May 5, 2014, pending resolution of state court proceedings.  (Doc. 27).  On May 26, 2015, at Martz's request (Doc. 29), the Court lifted the stay and afforded the parties the opportunity to file supplements if deemed necessary.  (Doc. 35).  Martz supplemented his petition on June 12, 2015.  (Doc. 37). Respondents supplemented their response on July 15, 2015.  (Doc. 41).  The petition is now ripe for disposition and, for the reasons that follow, the petition will be denied.

I.    **Background**

The Superior Court of Pennsylvania succinctly recited the relevant facts and procedural history of this matter as follows:

On June 22, 2005, a jury convicted [Martz] on one count of indecent assault, 18 PA.C.S.A. § 3126(a)(7), and one count of corruption of minors, 18 PA.C.S.A. § 6301(a)(1), in connection with his sexual assault of an eleven-year-old girl. On February 22, 2006, the trial court sentenced [Martz] to one year to four years in prison for indecent assault, and one year to four years in prison for corruption of minors, the sentences to run consecutively. Thus, [Martz's] aggregate sentence was two years to eight years in prison. Additionally, the trial court found [Martz] to be a sexually violent predator for Pennsylvania's Megan's Law III purposes. [42 PA.C.S.A. §§ 9791-99].

On August 10, 2006, the trial court filed an amended sentencing order indicating [Martz's] sentences were to run concurrently, resulting in a reduced aggregate sentence of one year to four years in prison. On direct appeal, this Court affirmed [Martz's] conviction but held the trial court erred when it filed its amended sentencing order reducing [Martz's] sentence. Commonwealth v. Martz, 926 A.2d 514 (Pa. Super.2007). Therefore, on June 25, 2007, upon remand, the trial court reinstated [Martz's] original sentence in which [Martz] was to serve his sentences consecutively, thus resulting in an aggregate of two years to eight years in prison. However, after the trial court reinstated [Martz's] original sentence, for unknown reasons, the Montour County Clerk of Courts failed to transmit the June 25, 2007 sentencing order to the Pennsylvania Department of Corrections (the DOC).

On January 18, 2008, [Martz] filed a petition under the Post Conviction Relief Act (PCRA), 42 PA.C.S.A. §§ 9541–46. However, during the pendency of his petition, unaware [Martz's] sentences were to run consecutively, the DOC released [Martz] from custody on January 21, 2010, at the end of his maximum four-year "concurrent" sentence. That is, [Martz] was not placed on parole; but rather, he was released from prison after he "maxed out" his August 10, 2006 sentence, which imposed concurrent sentences, as opposed to his reinstated June 25, 2007 sentence, which imposed consecutive sentences.

Believing [Martz] was no longer eligible for relief since he was not "currently serving a sentence of imprisonment, probation, or parole for the crime," 42 PA.C.S.A. § 9543(a)(1)(i), the Commonwealth moved to dismiss [Martz's] PCRA petition. On June 22, 2010, the PCRA court granted the Commonwealth's motion, thereby dismissing [Martz's] PCRA petition without reaching the merits thereof. On July 12, 2010, [Martz] filed a notice of appeal to this Court.

Subsequently, on August 11, 2011, the Commonwealth discovered the Clerk of Courts had failed to send the June 25, 2007 re-sentencing order to the DOC, and therefore, [Martz] had been mistakenly released from prison before the completion

of his sentence.  As a result, the Commonwealth applied for a bench warrant, and, on August 12, 2011, [Martz] was detained.  On September 1, 2011, following a hearing, the trial court recommitted [Martz] to serve the remainder of his sentence under the terms of the June 25, 2007 re-sentencing order.  However, the trial court gave [Martz] credit for "time served" from January 21, 2010, when he was mistakenly released from prison due to an apparent clerical error, until September 1, 2011, when he was recommitted to serve the remainder of his sentence.  The Commonwealth filed a notice of appeal . . . arguing in its timely-filed court-ordered PA.R.A.P. 1925(b) statement that the trial court imposed an illegal sentence on September 1, 2011, when it gave [Martz's] credit for "time served" while he was at liberty.  In its PA.R.A.P. 1925(a) opinion, in responding to the Commonwealth's issue, the trial court explained, in relevant part, the following:

> In reviewing a series of cases, the [Pennsylvania] Commonwealth Court said that "[t]hese cases indicate that a prisoner has the right to serve a sentence continuously rather than in installments, but a continuous sentence may be interrupted by some fault of the prisoner.... The principle is applicable where prison authorities erroneously release a prisoner from prison and then deny the prisoner credit for the time spent outside of prison."  Forbes v. Pennsylvania Department of Corrections, 931 A.2d 88, 93 (Pa.Cmwlth. 2007)[, affirmed, 596 Pa. 492, 946 A.2d 103 (2008) (per curiam ) ] (citations omitted).  In this case, the prisoner was erroneously released due to no fault of his own, but due to a systemic clerical error.  He had a right to serve his sentence continuously.  Practically speaking, he is back in prison with almost two and one-half years left to serve on his maximum sentence, one of which will satisfy his minimum sentence.

Trial Court's PA.R.A.P. 1925(a) Opinion filed 10/20/11 at 2-3.

> On appeal, the Commonwealth's sole contention [was] that the trial court erred in giving [Martz] credit for "time served" from January 21, 2010, when he was mistakenly released from prison due to a clerical error, until August 12, 2011, when [Martz] was detained.

Com. v. Martz, 2012 PA Super 87, 42 A.3d 1142, 1143-45 (2012).  The Superior Court concluded that the trial court erred in granting Martz credit for the time he was erroneously at liberty from January 21, 2010 to August 12, 2011, and remanded the matter to the trial court for resentencing.  (Id. at 1151).  Martz's petition for allowance of appeal was denied.  Com.

3

v. Martz, 618 Pa. 685; 57 A.3d 69 (Table).  Martz was subsequently resentenced on

December 20, 2012, in accordance with the superior court's directive.  (Doc. 19-2, p. 21).

On October 15, 2013, Martz filed the instant petition for writ of habeas corpus.  (Doc.

1), which was stayed on May 5, 2014, to allow him to pursue his PCRA petition, which had

been resurrected.  (Doc. 19-2, p.  2).  On November 25, 2013, an order issued scheduling

Martz's PCRA hearing for January 13, 2014.  (Id.)  The hearing was continued on January

23, 2014, pending the filing of an amended PCRA petition (Id. at 4-5), which was filed on or

about January 31, 2014.  (Doc. 41-10, p. 2).  The Commonwealth responded by filing an

answer and supplemental answer to the amended PCRA petition.  An evidentiary hearing was

held on April 3, 2014.  (Doc. 41-9, pp. 1-131).  Relief was denied at the conclusion of the

hearing.  (Doc. 41-9, pp. 126-31; Doc. 41-8, p. 2).  Martz appealed and, on March 31, 2015,

the Superior Court affirmed the PCRA court's denial of relief.   (Doc. 41-2, pp. 2-8).

Thereafter, Martz returned to federal court seeking review of the following issues:

Ground One:  [Martz's] right to a speedy trial under the Sixth Amendment to the
United States Constitution was violated.

Ground Two: [Martz's] Sixth Amendment right to effective assistance of counsel
and Fourteenth Amendment right to Due Process were violated when Trial
Counsel failed to seek a cautionary jury instruction.

Ground Three:  The evidence presented by the Commonwealth was not sufficient
to prove Petitioner guilty of Indecent Assault and Corruption of Minors beyond
a reasonable doubt.

Ground Four: Prosecutorial misconduct violated Petitioner's Sixth and Fourteenth
Amendment rights under the Constitution of the United States.

Ground Five:  [Martz] was denied effective assistance of counsel under the Sixth

Amendment of the United States [Constitution] when counsel stipulated to a grossly inaccurate and highly prejudicial sexual offender's assessment report that had a direct impact on [Martz's] sentence.

Ground Six: [Martz's] right to serve his sentence continuously and in a timely manner was denied after he was erroneously released from prison, then taken back into custody while being denied credit for time he was erroneously at liberty.

Ground Seven: [Martz] is entitled to credit toward the service of a term of imprisonment that was a result of another charge which [Martz] was arrested after the commission of the offense for which he was sentenced because that time has not been credited against another sentence.

(Doc. 1, pp. 5-19).

## II.   **STANDARDS OF REVIEW**

### A.   **Non-Cognizable Claims**

By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts.  Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure.  See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994).  Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 habeas relief, absent a showing that those violations are so great as to be of a constitutional dimension.  See Priester v. Vaughan, 382 F.3d 394, 401–02 (3d Cir .2004).

### B.   **Exhaustion and Procedural Default**

The state courts must have the first opportunity to redress any claimed violation of a habeas petitioner's federal rights. Picard v. Connor, 404 U.S. 270, 275–76 (1971). The habeas statute codifies this principle by requiring that a petitioner exhaust the remedies available in the courts of the State. 28 U.S.C. § 2254(b)(1)(A). Therefore, a state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process); see also Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard, 404 U.S. at 275 (1971); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir.1997).

"Fairly presenting" a federal claim to the state courts requires the petitioner to present both the factual and legal substance of the claim in such a manner that the state court is on notice that the federal claim is being asserted. See McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir.1999). Citations to the Constitution or to federal case law can provide adequate notice of the federal character of the claim. Evans v. Court of Common Pleas, 959 F.2d 1227, 1232 (3d Cir. 1992). A petitioner may also alert the state courts through "reliance on state cases employing [federal] constitutional analysis in like fact situations," or "assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution." Id. Thus, a federal claim may be fairly presented to the state courts even

when the petitioner makes no express reference to federal law.  McCandless, 172 F.3d at 261.

Further, the federal claims raised in the state courts need not be identical to the claims now pursued in federal court.  See Picard, 404 U.S. at 277 (recognizing that petitioner is entitled to "variations in the legal theory or factual allegations used to support a claim").  But the exhaustion requirement would "serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts."  Id. at 276.  A petitioner has exhausted a federal claim only if he or she presented the "substantial equivalent" of the current claim to the state court.  Id. at 278; see also McCandless, 172 F.3d at 261 (holding that petitioner must present both "factual and legal substance" of claim to state courts).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'  28 U.S.C. § 2254(b).  In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default.  See Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)."  McCandless, 172 F.3d at 260.  To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).  "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally

7

unfair" as a result of a violation of federal law.  See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," Murray, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001).  The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency.  Bousley v. United States, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496.  A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt.  Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004).

Similarly, if a petitioner fairly presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted.  See Coleman, 501 U.S. at 750; Harris v. Reed, 489 U.S. 255, 260–64 (1989).  A petitioner can avoid the bar by showing "cause for the default and prejudice attributable thereto," or by "demonstrat[ing] that the failure to consider the federal claim will result in a fundamental miscarriage of justice."  Harris, 489 U.S. at 262 (1989).

### C.     Claims Adjudicated on the Merits by the State Court

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," Greene v. Fisher, — U.S. — , 132 S.Ct. 38, 43 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal quotation marks and citation omitted).  The burden is on Martz to prove entitlement to the writ. Id.

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A decision is an "unreasonable application" of federal law if the state court identified the correct governing legal rule but applied the rule to the

facts of the case in an objectively unreasonable manner.  <u>Renico v. Lett</u>, 559 U.S. 766, 773

(2010).  A decision is based on an "unreasonable determination of the facts" if the state

court's factual findings are objectively unreasonable in light of the evidence presented to the

state court.  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**III.   <u>DISCUSSION</u>**

    **A.   Ground One:  Right to a Speedy Trial**

Martz argues that his right to a speedy trial under the Sixth Amendment to the United

States Constitution was violated.  (Doc. 1, p. 5).  In raising this issue, he concedes that "[t]his

issue was exhausted only as a state rule 600 [<u>See</u> PA.R.CRIM.P. Rule 600].  Appellate

Counsel failed to raise issue on direct appeal as a Sixth Amendment violation."  (<u>Id.</u>)

It is clear from review of state court proceedings, and Martz's concession, that he

failed to present both the factual and legal substance of his right to a speedy trial claim in

such a manner that the state court was on notice that a federal claim was being asserted.  <u>See</u>

<u>McCandless</u>, 172 F.3d at 261.  Review of the record reveals that Martz's speedy trial

challenge was limited to PA.R. CRIM. P. 600.  (Doc. 41-14, pp. 2-12).  Speedy trial claims

under Rule 600(A)(2) and the Pennsylvania Constitution are not the proper subject of habeas

review, in that they are based on state, and not federal law.  <u>See</u>, <u>e.g.</u>, <u>Wells v. Petsock</u>, 941

F.2d 253, 256 (3d Cir. 1991) (refusing to consider Rule 1100/Rule 600 violation when

analyzing Sixth Amendment speedy trial claim, "even if that [state procedural] rule is

intended as a guide to implement a federal constitutional guarantee.").  <u>See</u> also <u>Cunningham</u>

<u>v. Kerestes</u>, Civ. A. No. 07–4237, 2008 WL 8423704, at *12 (E.D.Pa., Aug.19, 2008).  Any

speedy trial claim based on the state procedural rule is not cognizable on federal habeas corpus relief, as the Sixth Amendment does not require a defendant to be brought to trial within any specified period of time. See, e.g., Wells, 941 F.2d at 256. See also Barker v. Wingo, 407 U.S. 514, 530–32 (1972) (identifying factors to consider in Sixth Amendment speedy trial analysis and eschewing rigid limitations contained in state statutes).

As stated *supra*, [w]hen a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, [as is the case here,]the exhaustion requirement is satisfied because there is "an absence of available State corrective process." 28 U.S.C. § 2254(b); see Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006) (stating "[u]nder the procedural-default doctrine, when a prisoner has exhausted his state remedies but has not given the state courts a fair opportunity to pass on his federal claims, the prisoner has procedurally defaulted his claims...."); Bridges v. Beard, 941 F.Supp.2d 584, 621 (E.D.Pa.2013) (discussing exhaustion and procedural default requirements).  However, the merits of procedurally defaulted claims may not be considered unless the applicant establishes "cause and prejudice" or a 'fundamental miscarriage of justice' to excuse his or her default.  McCandless, 172 F.3d at 260.  Martz fails to establish cause and prejudice.  There is simply nothing in the record to establish that some objective external factor prohibited him from presenting this claim during the state court proceedings or that the outcomes of his state proceedings were unreliable or fundamentally unfair as a result of a violation of federal law.  Nor does Martz establish that the failure to review his claim would result in a fundamental miscarriage of justice; he does

not allege the existence of new reliable evidence, not presented at his trial, that demonstrates that no reasonable juror would have tendered a vote of guilty beyond a reasonable doubt.

Martz fares no better in attempting to have his speedy trial ground considered in the context of ineffective assistance of PCRA counsel.  Freestanding claims of ineffective assistance of PCRA counsel are not cognizable on federal habeas review.  28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); see also Coleman, 501 U.S. at 722, 752–53; Pennsylvania v. Finley, 481 U.S. 551, 555–56 (1987); Holman v. Gillis, 58 F. Supp.2d 587, 597 (E.D.Pa. 1999) (finding that "a claim of ineffective assistance of PCRA counsel is not cognizable in a federal habeas corpus petition because the right to effective assistance of PCRA counsel exists pursuant to state law, and is not mandated by the Constitution or laws or treaties of the United States.").

### B.     Grounds Two and Five:  Ineffective Assistance of Counsel

The test for ineffective assistance of counsel is a well settled and firmly established one containing two components.  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984).  "Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's

errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id.

In analyzing Martz's ineffective assistance of counsel claims, the state court utilized the following three pronged state law test of ineffectiveness:

> To succeed on an ineffectiveness claim, Martz must demonstrate by the preponderance of the evidence that[:]
>
>> (1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different.
>
> Commonwealth v. Ali, 10 A.3d 282, 291 (Pa. 2010).  A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. Commonwealth v. Martin, 5 A.3d 177, 183 (Pa. 2010).  Counsel is presumed to be effective and the burden is on the appellant to prove otherwise. Commonwealth v. Hanible, 30 A.3d 426, 439 (Pa. 2011).

(Doc. 41-2, pp. 6-7); Com. v. Martz, No. 742 MDA 2014, 2015 WL 7458906, *3 ( Pa. Super. March 31, 2015).  The United States Court of Appeals for the Third Circuit has ruled that this standard is not "contrary to" Strickland.  Werts v. Vaughn, 228 F. 3d 178, 203 (3d Cir. 2000). Therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, *i.e.*, the state court decision evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland."  (Id. at 204).

In Ground Two, Martz contends that his Sixth Amendment right to effective assistance of counsel and Fourteenth Amendment right to Due Process were violated when

Trial Counsel failed to seek a cautionary jury instruction. (Doc. 1, p. 6). In support, Martz offers the following: "The victim, [ ], testified at trial that she did not look at the person during the alleged assault. She identified the Petitioner as the person she saw in her living room earlier in the evening. Trial Counsel, Kim Hill, did not seek a [Commonwealth v.] Kloiber [, 106 A2d 820, 826, 27 (Pa. 1954)] cautionary jury instruction despite the victim testifying that she was not in a position to clearly observe her assailant. The victim testified at trial that she woke up twice that night. The first time is when she saw the Petitioner. The second time she woke up is when she was being assaulted, but she never looked to see who that person was. She never spoke to her assailant, her assailant never spoke to her. The victim also testified that the room was dark." (Id. at 6).

The Superior Court concluded that Martz "failed to establish that counsel was ineffective for failing to request a Kloiber instruction, as the evidence of record reveals that the child victim positively identified Martz as being in her bedroom before she fell asleep, and Martz did not contest that he had been in the victim's bedroom on several occasions and had slept there at night. See N.T., 4/3/14, at 35-37, 43-44; see also Kloiber, 106 A.2d 826-27 (stating that the court should warn the jury that the testimony as to identity must be received with caution where the witness "is not positive as to identity" or has failed "to identify defendant on one or more prior occasions."). Thus, no Kloiber instruction was warranted." (Doc. 41-2, p. 7).

Significantly, one victim testified that some time before she went to sleep, Martz was near her bed and that she had seen him at another point in the night. (Doc. 41-9 at pp. 37-

14

38). Additionally, at the PCRA hearing, trial counsel testified that a <u>Kloiber</u> instruction would have been inconsistent with his defense. (<u>Id.</u> at 44-45). "[O]ur defense was not that someone else snuck in the house and touched these little kids and it wasn't Dereck, it was somebody else, that wasn't our defense. Our defense was these children, it did not happen, they did not remember it clearly, they could not identify him as the one who did the specific act. That was the defense, not that somebody else may have done it...." (<u>Id.</u> at 45).

There is ample support in the record to conclude that the Superior Court's disposition was an objectively reasonable and justifiable application of <u>Strickland</u>

In the Fifth Ground, Martz contends that he "was denied effective assistance of counsel under the Sixth Amendment of the United States [Constitution] when counsel stipulated to a grossly inaccurate and highly prejudicial sexual offender's assessment report that had a direct impact on [Martz's] sentence." (Doc. 1, p. 12). "Dr. Velkoff's [sic] report was so inaccurate and unreliable that trial counsel should have objected to the report being made part of the record." (Doc. 1, p. 14).

The Superior Court concluded that Martz "failed to establish that there was no reasonable basis for trial counsel's stipulation to the admission of the SOAB report, as the evidence of record reveals that the author of the report[, Dr. Voelker,] was present at trial to authenticate the report, trial counsel objected to the inaccuracies in the report, and trial counsel feared that raising an objection to the admissibility of the report might have had a negative impact on the additional child rape charges that Martz was facing at the time of trial. See N.T., 4/ 3/ 14, at 44-46)." (Doc. 41-2, p. 8).

There is ample support in the record for this conclusion. At the PCRA hearing, trial

counsel testified that he did not object to the admissibility of Dr. Voelker's report during the sexually violent predator ("SVP") hearing.  (Doc. 41-9, p. 23).  He did, however, cross examine the author.  He testified that "[o]n direct testimony Mr. Voelker had, as I said, testified that there were four findings that he made that gave rise to his finding of being a sexually violent predator.  My review of the report prior to the hearing indicated that at least three of those four bases were not anywhere in any of the documents.  They were not present in the documentation.  And I cross-examined Mr. Voelker at some length on that."  (Id. at 24).  Counsel also indicated that the manner and degree to which he challenged the report was hindered by other  child rape charges pending against Martz.  (Id. at 45-46).

The record clearly supports that the Superior Court's disposition was a reasonable and justifiable application of Strickland.  Consequently, Martz is not entitled to relief on this claim.

### C.      Ground Three: Insufficient Evidence

The issue "that the jury did not have sufficient evidence to convict him of indecent assault and corruption of minors," was presented to the state courts during the direct appeal proceedings.  (Doc. 41-14, pp. 18-19).  However, the Superior Court deemed the issue waived because Martz was "remiss in fulfilling the duty to provide a record which is sufficient to permit meaningful appellate review. . . ."  (Id. at 19).

"A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.' "  Beard v. Kindler, 558 U.S. 53, 56 (2009)

(quoting <u>Coleman</u>, 501 U.S. at 729).[1]  "A state rule provides an adequate and independent basis for precluding federal review if (1) the rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) their refusal was consistent with other decisions."  <u>Nara v. Frank</u>, 488 F.3d 187, 199 (3d Cir. 2007) (citations omitted).  The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits.  <u>See</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 81-82, 90 (1977).

The Superior Court stated as follows in considering the issue:

¶ 22 Before addressing the merits of [Martz's] claim, we must decide whether it is reviewable.  First, we observe that the contention raised by [Martz] necessitates a review of the trial transcript dated June 22, 2005, to determine if the evidence presented by the Commonwealth was sufficient to prove [Martz] guilty of indecent assault and corruption of minors beyond a reasonable doubt.  However, a review of the certified record shows no reference to the inclusion of the trial transcript for our review.

¶ 23 It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in the case.  <u>Commonwealth v. Boyd</u>, 679 A.2d 1284, 1290 (Pa. Super. 1996) (<i>citing</i> <u>Commonwealth v. Young</u>, 456 Pa. 102, 317 A.2d 258 (1974)).  It is also well-settled in this jurisdiction that it is Appellant's responsibility to supply this Court with a complete record for purposes of review.  <u>Commonwealth v. Hallock</u>, 722 A.2d 180, 181 (Pa. Super. 1998).  "A failure by [A]ppellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes waiver of

---

[1]Ordinarily, a state prisoner seeking federal habeas relief must first exhaust available state court remedies, thereby affording those courts "the first opportunity to address and correct alleged violations of [the] prisoner's federal rights."  <u>Coleman,</u> 501 U.S., at 731.  The adequate and independent state ground doctrine furthers that objective, for without it, "habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court."  <u>Id.,</u> at 732.

the issue sought to be examined." <u>Boyd</u>, 679 A.2d at 1290 (*quoting* <u>Smith v. Smith</u>, 637 A.2d 622, 623 (Pa. Super. 1993), *allocatur denied*, 539 Pa. 680, 652 A.2d 1325 (1994)).

¶ 24 Because we have been presented with no evidence of record to support the sufficiency of the evidence claim raised by [Martz], the course to pursue is well-marked and directs that, where the Appellant is remiss in fulfilling the duty to provide a record which is sufficient to permit meaningful appellate review as is the case here, the issue raised challenging the sufficiency of the evidence will be deemed waived. <u>Boyd</u>, 678 A.2d at 1290.

(<u>Id.</u> at 18-19).

The rule upon which the Superior Court relied in refusing to consider the merits of Martz's claim speaks in unmistakable terms. <u>See</u> <u>Commonwealth v. Clayton</u>, 572 Pa. 395, 816 A.2d 217, 221 (2002) (stating that "[i]t is a well settled principle of appellate jurisprudence that undeveloped claims are waived and unreviewable on appeal"), <u>Commonwealth v. Williams</u>, 557 Pa. 207, 732 A.2d 1167, 1175 (1999) (recognizing "unavailability of relief based upon undeveloped claims for which insufficient arguments are presented on appeal")). Also, as is evident from ¶ 23 of the opinion, the decision not to consider the merits is consistent with the law of the jurisdiction. Further, all state appellate courts refused to review the claims on the merits. It is clear that the Superior Court's refusal to consider Martz's insufficiency of the evidence claim was based on an independent and adequate state rule and, as such, the claim is procedurally defaulted and federal review is barred.

Notwithstanding this conclusion, a petitioner can avoid the bar by showing "cause for the default and prejudice attributable thereto," or by "demonstrat[ing] that the failure to

consider the federal claim will result in a fundamental miscarriage of justice." Harris, 489

U.S. at 262.  Martz has not asserted, much less demonstrated, any cause or prejudice, nor has

he argued that he will suffer any fundamental miscarriage of justice as a result of this Court's

failure to review his claim.  Any review of this claim is therefore precluded.

      D.    **Ground Four:  Prosecutorial Misconduct**

     In his Fourth Ground, Martz contends that "prosecutorial misconduct violated his

Sixth and Fourteenth Amendment rights under the Constitution of the United States."  (Doc.

1, p. 9).  In support, he alleges as follows: "On the morning of June 22, 2005, Debra Davi,

served a defense subpoena upon Julie Hidlay to testify at trial.  Ms. Hidlay would have

testified that shw was present in the house on the night of the alleged assault.  Ms. Hidlay

told Ms. Davi that she was contacted by DA Robert Buehner and told by him that if she was

subpoenaed by the defense she should disregard the defense subpoena and that she was not

involved in the case."  (Id.).

     Martz characterizes this as a prosecutorial misconduct claim.  It is clear from review

of the state court direct appeal and collateral proceedings, that this claim was not presented to

the state courts.  Hence, this claim is procedurally defaulted. Martz fails to establish cause

and prejudice.  The record is devoid of any indication that some objective external factor

prohibited him from presenting this claim during the state court proceedings or that the

outcomes of his state proceedings were unreliable or fundamentally unfair as a result of a

violation of federal law.  Nor does he establish that the failure to review his claim would

result in a fundamental miscarriage of justice in that he fails to allege that there is new

reliable evidence, not presented at his trial, that demonstrates that no reasonable juror would have tendered a vote of guilty beyond a reasonable doubt.

Martz did, however, present to the state courts the issue of prosecutorial misconduct in the context of ineffective assistance of counsel.  Specifically, the issue was presented as follows: "Did the [PCRA] court commit an error of law in failing to find trial counsel ineffective for failing to notify the court about prosecutorial misconduct of the Montour County District Attorney, Robert Buehner?"  (Doc. 41-2, p. 4).  In considering the issue, the superior court concluded that Martz "failed to establish that trial counsel was ineffective for failing to report alleged prosecutorial misconduct, as the evidence of record reveals that, "no matter what[,]" he was not going to call Julie Hidlay to testify at trial.  See N.T., 4/3/14, at 37-38.  Thus, even if the prosecutor had instructed Ms. Hidlay not to respond to a subpoena, no prejudice resulted to Martz."  (Doc. 41-2, at p. 7).  At the PCRA hearing, Martz's trial counsel testified to the following:

> Q.   Paragraph 13 is an allegation that you provided ineffective representation by failing to notify the Court about the prosecutorial misconduct of District Attorney Buehner, and I believe this concerns the issue of the subpoena.  Is ther anything you want to add to that response to that averment.
>
> A.   I do not remember any information I received regarding District Attorney Buehner doing anything.   I don't remember him being part of this discussion. The discussion was was she served, why didn't she call me and that I was not interested in calling somebody that I had never spoken to on the day of trial.  This was the morning of trial, we were walking in to take our seats at the table is when there was information  about Julie Hidlay being available or not being available, I don't remember what it was, but I wasn't going to call her no matter what.   I don't remember District Attorney Buehner being in that conversation in any way.  That wasn't part of the discussion we has.

Q.      So you attempted to contact Ms. Hidlay before trial and she never returned
        your call, is that correct?

A.      Correct, there was a long time between the preliminary hearing and the
        filing of the complaint, the preliminary hearing and the trial.  I think there
        was a year or more because of the delay in getting discovery.  And I know
        I called her early on because Mr. Martz had given me the names of three
        or four individuals and I had called her and left her messages.  I don't
        recall why she didn't call me.  I think Dereck told me why she wasn't
        returning the call but I don't remember what it was.  I don't remember the
        reason.  I don't know if she was ill or out of town or something like that,
        but I never was able to talk to her.

Q.      So you made a strategic decision that because she never contacted you that
        you would not call a witness that you did not have a chance to speak to to
        determine what their testimony would be?

A.      Correct.  And my notes, which I did have notes about Julie, my notes
        indicate that what Dereck told me she could testify to was that he told her
        that he didn't do it.  I didn't think that was all that big of an issue.  I didn't
        think she would be all that important a witness, useful witness and I hadn't
        spoken to her yet.

Q.      Could that possibly have been inadmissible as a hearsay statement?

        Mr. McDanel:        Objections.  Calls for speculation.

        Mr. Schmidt:        I'm asking him about his strategic choice as to
                            why he would n't call the witness. I think - -

        The Court:          Overruled.

        Mr. Hill:           Well, I mean, my concern was that it was so
                            self-serving that it wouldn't be any help to a
                            Defendant to have his – I don't know if Julie
                            was a sister, cousin, some relation, I'm not
                            sure what the relationship was but I didn't
                            think that would make a terribly large impact
                            on the jury to have her go in and say Dereck
                            told me I didn't do it.  I didn't think that
                            would help.

21

(Doc. 41-9, pp. 38-40).  Counsel further testified that had the district attorney acted in an ethically improper manner, he would have brought it to the Judge's attention.  (Id. at 43).  "I do not recall that ever being raised with me.  I would have brought it to the Judge's attention if I knew the he had interfered with a subpoenaed witness, I certainly would have taken it to the Judge."  (Id. at 43-44).

There is ample support in the record to conclude that the Superior Court's disposition was a reasonable and justifiable application of Strickland.  Consequently, to the extent that Martz seeks relief on the grounds that counsel was ineffective, his claim is denied.

### E.  Grounds Six and Seven:  Sentence Credit

Federal courts "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). In Grounds Six and Seven, Martz seeks sentence credit for time served.  However, those sentences expired during the course of these proceedings.  Generally, when a prisoner is challenging the execution of his sentence pursuant to a petition for writ of habeas corpus, the petition becomes moot if the prisoner completes his term of imprisonment before the habeas proceedings have concluded.  See e.g., Spencer v. Kemna, 523 U.S. 1, 7-8 (1998); Lane v. Williams, 455 U.S. 624, 631-34 (1982).  Some concrete and continuing injury, other than the now-ended incarceration, some "collateral consequence" of the conviction, must exist if the suit is to be maintained.  Carafas v. LaVallee, 391 U.S. 234, 237-238 (1968).

Federal courts do not have jurisdiction to decide an issue unless it presents a live case

or controversy.  DeFunis v. Odegaard, 416 U.S. 312, 316 (1974).  The "case or controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.... The parties must continue to have a personal stake in the outcome of the lawsuit." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477-78 (1990).  See also, Khodara Envtl., Inc. ex rel. Eagle Envtl., L.P. v. Beckman, 237 F.3d 186, 192-93 (3d Cir. 2001) (stating "Article III of the Constitution grants the federal courts the power to adjudicate only actual, ongoing cases or controversies."); Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996) (finding "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the merit of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot.").  What was once a live case or controversy may become moot if (1) the alleged violation has ceased and there is no reasonable expectation that it will recur, and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979).  The sentence credit claims raised in Grounds Six and Seven have been rendered moot by the expiration of the sentences.   "Nullification of a conviction may have important benefits for a defendant . . . but urging in a habeas corpus proceeding the correction of a sentence already served is another matter." North Carolina v. Rice, 404 U.S. 244, 248 (1971).

## IV.   **Conclusion**

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied.

23

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003). Pettiioner fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Martz from appealing the order dismissing his petition so long as he seeks, and obtains, a certificate of appealability from the court of appeals.  See Fed. R. App. P. 22(b)(1), (2).

A separate order will enter

**BY THE COURT:**

<u>**s/James M. Munley**</u>
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated:          May 4,  2016